UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-23435-CIV-MOORE/SIMONTON

**NATIONAL FRANCHISEE ASSOCIATION,**

      Plaintiff,

v.

**BURGER KING CORPORATION,**

      Defendant.
_____/

## OMNIBUS DISCOVERY ORDER

This matter is before the Court upon Plaintiff's Motion to Compel Production of Documents Responsive to Plaintiff's First Request for Production of Documents to Burger King Corporation (DE # 42); Defendant Burger King Corporation's Motion for Protective Order Regarding Coca-Cola Subpoena (DE # 66); Plaintiff's Cross-Motion to Compel Production of Documents from Coca-Cola (DE # 75); and, Plaintiff National Franchise Association's Motion to Compel Production of Documents From Defendant Burger King in Response to Second Request for Production (DE # 100). The Honorable K. Michael Moore, United States District Judge, has referred all pretrial discovery matters not affecting deadlines set by the Court's Scheduling Order to the undersigned Magistrate Judge (DE # 5).

On September 10, 2010, a hearing was held on the Motions. For the following reasons, upon thorough consideration of the Parties' submissions and the record as a whole, the undersigned orders that Plaintiff's Motion to Compel Documents Responsive to Plaintiff's First Request for Production of Documents (DE # 42) is GRANTED, in part; Defendant Burger King Corporation's Motion for Protective Order Regarding Coca-Cola Subpoena is DENIED (DE # 66); Plaintiff's Cross-Motion to Compel Production of Documents from Coca-Cola is GRANTED (DE # 75);  and, Plaintiff's Second Motion to

Compel Production of Documents From Defendant Burger King in Response to Plaintiff's Second Request for Production (DE # 100) is GRANTED.

I.     **FACTS**

This matter was initiated when Plaintiff National Franchisee Association ("NFA") filed a class action complaint seeking declaratory relief related to Defendant Burger King Corporation's ("BKC" or "Burger King") alleged violation of BKC franchise agreements executed between individual members of NFA and BKC.  Specifically, NFA asserted that BKC improperly set a $1.00 limit on the price that franchisees could charge for the Double Cheese Burger (DCB) and further set maximum prices for other items contained on the Burger King Value Meal Menu (DE # 1 ¶¶ 30, 31, 34).  Plaintiff alleges that in 2002, BKC first issued a 99 cent BK Value Menu Policy Statement based upon "recent changes in the law" that according to BKC, permitted the company to establish a maximum price a franchisee could charge for select products in certain situations (DE # 1 ¶ 25). In 2005, BKC introduced a new $1.00 Value Menu (DE # 1 ¶ 27).  Plaintiff alleges that prior to 2009, BKC only set price points for certain items, e.g. the Value Menu, with the consensus of two-thirds of the franchisees who indicated their support by submitting a Show of Support ("SOS") Voting Form (DE # 1 ¶¶ 34, 27).

According to the Complaint, after unsuccessfully seeking support from the franchisees to place the Double Cheese Burger on the $1.00 Value Menu in 2008, Defendant BKC, without the support of the franchisees, announced that beginning in October 2009, the franchisees would be required to offer the DCB as part of the $1.00 Value Menu (DE # 1 ¶ 34).  NFA alleges that it costs the franchisees more than $1.00 to produce the DCB (DE # 1 ¶ 33).  In the Complaint, NFA requested the Court to declare that the Franchise Agreements between the franchisees and BKC did not obligate the

franchisees to comply with the price points set by BKC (DE # 1 ¶ 42).

Burger King filed a Motion to Dismiss (DE # 17) asserting that pursuant to the terms of the Franchise Agreement, Burger King had the right to impose the Value Menu on its franchisees.  BK further asserted that the issue regarding Burger King's right to impose maximum prices on its franchisees had already been determined by the Eleventh Circuit (DE # 17 at 2).  In support of its Motion to Dismiss, Burger King submitted a Representative Franchise Agreement which set forth the contractual obligations between Burger King and the individual franchises (DE # 17-1).  The Representative Agreement provides, in relevant part,

> 5. Standard and Uniformity of Operation
>
> FRANCHISEE agrees that changes in the standards, specifications and procedures may become necessary and desirable from time to time and agrees to accept and comply with such modifications, revisions and additions to the MOD Manual which BKC in the *good faith* exercise of its judgment believes to be *desirable and reasonably necessary*.

(DE # 17-1 at 8) (emphasis added).

The Court granted, in part, Burger King's Motion to Dismiss (DE # 37).  In doing so, the Court stated, *inter alia*, that the Eleventh Circuit determined in *Burger King Corp. v. E-Z Eating 8th Corp., et al*, 572 F. 3d 1306 (11th Cir. 2009), as a matter of law, that the clear and unambiguous language of Section 5(A) of the Franchise Agreement grants Burger King the right to impose the Value Menu on its franchisees (DE # 37 at 10-12).  In addition, the Court examined Section 5 of the Agreement and concluded that the language in that section unambiguously grants Burger King "the authority to establish and make changes in its comprehensive restaurant format and operating system, including product specifications." (DE # 37 at 15-16).  Thus, the Court dismissed that

portion of Plaintiff's Complaint which sought a declaration that Burger King did not have the authority under the Agreement to impose maximum prices on the franchisees. However, the Court also opined that the Complaint stated a claim against Burger King for breach of its contractual duty of good faith or its implied duty of good faith by imposing the maximum price of $1.00 for the Double Cheese Burger on the franchisees (DE # 37 at 16-17).

Prior to the Court's ruling on the Motion to Dismiss, by all accounts, in April of 2010, Burger King stopped requiring franchises to sell the DCB for $1.00 and raised the maximum price for that item to $1.29. In addition, BK introduced a new menu item, the "Buck Double", which is allegedly the same product as the DCB less one slice of cheese, and required Burger King franchisees to sell the Buck Double for $ 1.00 (DE ## 47, 57). On July 16, 2010, the Court granted Plaintiff leave to file a supplemental complaint to add allegations concerning the Buck Double and to permit the deletion of allegations related to Defendant's right to set maximum prices, generally (DE # 68). In addition, this action was consolidated with the matter of *Family Dining, Inc., et al., v. Burger King Corp.*, Case No. 10-21964-KMM, filed on June 15, 2010, which raised many of the same issues as the instant action (DE # 68).

In compliance with the Court's Order issued (DE # 98), on August 27, 2010, Plaintiffs Family Dining, Inc., Restaurant Associates of Cincinnati, Inc., Bravogrand, Inc., ERW, Inc., Atlantic Coast Foods, Inc., ("Individual Plaintiffs") and Plaintiff herein, National Franchisee Association representing its members, filed a Consolidated Class Action Complaint (DE # 102). The Consolidated Complaint advances four Claims for relief; Breach of Contract (First Claim), Breach of Implied Covenant of Good Faith and Fair Dealing (Second Claim), Declaratory Judgment (Third Claim) and Florida Deceptive

and Unlawful Trade Practices Act (FDUTPA) Fla Stat. § 501.204(1)(Fourth Claim).

Presently pending before this Court are Plaintiff's Motion to Compel Production of Documents Responsive to Plaintiff's First Request for Production of Documents to Burger King Corporation (DE # 42); Defendant Burger King Corporation's Motion for Protective Order Regarding Coca-Cola Subpoena (DE # 66); Plaintiff's Cross-Motion to Compel Production of Documents from Coca-Cola (DE # 75); and Plaintiff National Franchise Association's Motion to Compel Production of Documents From Defendant Burger King in Response to Plaintiff's Second Request for Production (DE # 100).

As stated above, on September 10, 2010, the undersigned held a hearing on the various discovery Motions wherein Counsel for Plaintiff and Defendant presented oral argument on the Motions. The undersigned now rules as follows on those Motions.

## II. RULINGS ON DISCOVERY MOTIONS

### A. Plaintiff's Motion to Compel Production of Documents Responsive to Plaintiff's First Request for Production of Documents to Burger King Corporation

In this Motion, Plaintiff sought to have the Defendant produce certain documents in response to Plaintiff's Request for Production of Documents (DE # 42). Defendant responded to the Motion (DE # 50) and Plaintiff replied (DE # 55).

#### 1. Requests for Documents related to Value Menu

At the outset of the hearing held on the Motion, Counsel for the Plaintiff stated that several of the discovery matters at issue had been resolved between the Parties. Specifically, as to the Plaintiff's Motion to Compel Production of Documents Responsive to Plaintiff's First Request for Production of Documents, Plaintiff indicated that the Requests for Production related to the Value Menu had been resolved. Thus, Plaintiff's Requests for Production ## 8, 11, 12, 13, 14, 15, 16, 30, 31 and 34 were all resolved prior

to the hearing.

The Parties also indicated that Request for Production of Documents # 28, regarding Burger King's enforcement of the requirement that the franchises place the DCB on the Value Menu had also been resolved.  However, certain other discovery issues remained in contention and the Parties therefore presented argument on those issues at the hearing.  Before addressing the individual requests at issue, it bears noting that Defendant did not advance arguments related to burdensomeness at the hearing and thus, the undersigned has made her determinations without regard to that issue.

### 2. Request for Show of Support Documents

At the hearing, the Parties indicated that they still disagreed about whether Defendant should have to produce Show of Support documents related to items other than the DCB.  As described above, prior to the placement of the DCB and the Buck Double on the Value Menu, Plaintiff alleges that Burger King only placed items on the Value Menu with the consensus of two-thirds of the franchisees who indicated their support by submitting a Show of Support Voting Form.  Plaintiff therefore sought to compel all Show of Support related documents and as reiterated at the hearing, specifically sought to compel the Defendant to provide documents responsive to Plaintiffs Requests For Production ## 35, 36, 37, 38, 39, 40, 41, 42, and 43, all of which sought Show of Support-related documents for products other than the DCB.  Plaintiff argued in its papers and at the hearing, that these documents are relevant to show that the action of placing the DCB on the Value Menu was not "desirable" as evidenced by the Franchisee's lack of support for that placement (DE # 55 at 8).

In its written response, Burger King asserted that the SOS related documents are totally irrelevant and argued that the Court's ruling on the Motion to Dismiss effectively

resolved the issue of whether Burger King could set maximum prices for certain items on the menu. The argument continues, therefore, whether there was franchise support for the placement of items on the Menu is not relevant to the Plaintiff's remaining claim. In addition, at the hearing, Defendant noted that prior to placing the DCB on the Value Menu, that 60% of the franchisees supported that decision and further argued that it is not for the jury or Court to second guess the decisions made by Burger King regarding the Value Menu. Rather, because Burger King had a contractual right to place items on the menu, only Burger King's good faith in doing so is at issue. Thus, the only relevant materials are those which were looked at and considered by Burger King in determining whether to place the DCB and the Buck Double on the Value Menu; not the Show of Support documents related to decisions to place other items on the menu. Finally, Burger King argued that the Show of Support documents were only relevant under a prior law that has since been changed which related to false advertising issues in order to ensure that 67% of the franchisees would offer a particular item at the price that was advertise by Burger King.

     After listening to the arguments of Counsel at the hearing, and based upon the written submissions, the undersigned concludes that the Show of Support ("SOS") documents requested in Plaintiff's Requests for Production are relevant to this action or may lead to the discover of relevant documents and thus must be produced. Defendant's argument that only SOS documents related to the DCB and the Buck Double are relevant to this action fails notwithstanding the fact that Plaintiff's sole claim now consists of whether Defendant breached its good faith duty, contractual or implied, in exercising its judgment to place the DCB and the Buck Double on the Value Menu. Rather, arguably, if Defendant had always relied upon the franchisees' show of support

in determining whether placement of certain items on the Value Menu was "desirable and reasonably necessary", then a departure from that practice could evidence a lack of good faith in placing the DCB and the Buck Double on the menu.  Simply put, the documents Plaintiff seeks are geared toward discovering the Defendant's decision-making process in placing the items at issue on the Value Menu.

Defendant cites to *Ernie Haire Ford v. Ford Motor Company*, 260 F. 3d 1285 (11th Cir. 2001) for support of its argument that the decisions made regarding the placement of certain items on the Value Menu can only constitute a breach of implied covenant of good faith and fair dealing if no other reasonable party would have made the same discretionary decision.  However, that reliance is misplaced for the following reasons.  First, the instant matter is in the discovery stage of proceedings, unlike *Ernie Haire* which was in the summary judgment stage, and thus at this point, Plaintiff is entitled to obtain information from Defendant that is likely to assist Plaintiff in proving its claims.  Second, in the Order on the Motion to Dismiss, the Court made clear that Plaintiff herein was entitled to challenge the imposition of changes to the price menu to the extent that those changes were not made in good faith (DE # 37 at 17).  While there are different elements of proof for a breach of contract claim and a breach of good faith claim, many of the documents and information relevant to proving those claims are the same.  Thus, the documents sought by Plaintiff are not irrelevant based solely upon the Order on the Motion to Dismiss.  To the extent those documents may assist in determining whether Defendant's decision making process regarding the pricing of the DCB or the Buck Double was performed in good faith, they are discoverable.

Moreover, although Defendant suggests that the prior course of dealings between the Parties does not override Defendant's express right to set prices as set forth in the

Franchise Agreement, those prior course of dealings are relevant to the parties' reasonable expectations under the contract and thus may be relevant in determining whether Defendant acted in good faith. As stated by the Eleventh Circuit,

> Florida law implies in every contract a covenant of good faith and fair dealing,...which is designed to protect the contracting parties' reasonable expectations...If a contract appears by word or silence to invest one party with a degree of discretion in the performance of its contractual duties, the implied covenant of good faith and fair dealing limits that party's ability to act capriciously to contravene the reasonable contractual expectations of the other party. The implied covenant of good faith and fair dealing does not, however, vary the express terms of a contract,...but, rather, attaches to the performance of specific contractual obligations.

*Mount Sinai Medical Center of Greater Miami, Inc. v. Heidrick & Struggles, Inc.*, 188 Fed. Appx. 966 (11th Cir. 2006) (citations and quotations omitted). Therefore, Plaintiff's Motion to Compel is granted in this regard. Defendant shall produce the show of support documents responsive to Plaintiff's Requests for Production ## 35, 37, 38, 39, 40, 41, 42, and 43.

### 3. Privilege Log & Confidentiality Agreement

At the hearing, the undersigned also addressed the issue raised in the Plaintiff's Motion to Compel regarding the failure of the Defendant to produce a privilege log when it provided Plaintiff responses to the written discovery requests. In its written Opposition to the Motion to Compel, Defendant stated that it would produce a privilege log "some reasonable time" after the Court rules on the Motion to Compel (DE # 50 at 5). The Plaintiff asserted that because Defendant failed to timely provide a privilege log and any objections based on privilege should be deemed waived (DE # 42 at 6).

Based upon the objections raised by the Defendant and the genuine issues in

dispute regarding the scope of discovery in this matter, the undersigned concludes that the Defendant did not waive its right to withhold certain documents based upon privilege and may provide a privilege log referencing those documents on or before October 1, 2010.

### 4. Boilerplate Objections

At the hearing, the undersigned also addressed Plaintiff's contention that Defendant improperly made boilerplate objections to the Plaintiff's discovery Requests. In its written opposition to the Plaintiff's Motion to Compel, Defendant asserted that many of the objections referred to in the Plaintiff's original Motion to Compel were resolved during the meet and confer held between the Parties.

As stated at the hearing, the undersigned has carefully reviewed the discovery responses from Burger King and concludes that they sufficiently stated Burger King's basis for objections to some of Plaintiff's discovery requests and were not "boilerplate" objections that require supplementation. Thus, in this regard, Plaintiff's Motion to Compel is denied.

### 5. Preservation of Evidence Policies

In the Motion to Compel, Plaintiff sought to compel Defendant to produce documents reflecting Burger King's preservation of evidence policies as requested in Plaintiff's Request for Production # 49. In its response to the Motion, Defendant stated that it had agreed to produce its internal "Preservation of Evidence" memorandum but objected to producing general record and email retention policies (DE # 50 at 12). Plaintiff asserted in its Reply that such documents should be produced in this action to assure Burger King's full compliance with discovery particularly in light of Burger King's resistance to producing discovery in this matter (DE # 55 at 8).

**Based upon the current record, the undersigned opines that Plaintiff has failed to demonstrate the need for additional document production in this area. Plaintiff has not indicated that the Defendant has destroyed any evidence or discovery in this matter, or is likely to do so. Thus, Plaintiff's Motion to Compel is denied on this issue.**

### 6.  Documents identifying Burger King's CEO, CFO President and Chief of Marketing since 1997

**In the Motion to Compel, Plaintiff sought to compel the Defendant to provide documents sufficient to identify certain Burger King Corporate Officers from 1997 through the present as requested in Request for Production # 50 contained in the Plaintiff's First Request for Production. Plaintiff indicated that Burger King had only produced information responsive to this Request beginning in the year 2009.**

**As stated at the hearing, information related to the 2002 Value Menu is relevant to this litigation and thus, the identity of Burger King's officers is relevant to this action beginning in 2002. However, the undersigned finds that Plaintiff's request for documents identifying Burger King's corporate officers prior to 2002 is too remote to be relevant to the instant action. Thus, the Plaintiff's Motion to Compel on this issue is only granted, in part. Defendant shall provide documents responsive to Plaintiff's Request for Production # 50 for the time period between 2002 until the present.**

### B.     Plaintiff NFA's Motion to Compel Production of Documents From Defendant Burger King in Response to 2nd Request for Production

**In Plaintiff's Second Motion to Compel Production, Plaintiff sought to have the Defendant compelled to produce documents responsive to certain requests contained in Plaintiff's Second Request for Production (DE # 100). Defendant filed a Response to the Motion (DE # 105). At issue in the Motion is the production of documents responsive to the following Requests for Production:**

11

    1.      Documents relating to or constituting BKC's in store and media event plan implemented after October 19, 2009, including for both the $1 DCB and the Buck Double central feature or promotions: this should include the television flight plan, commercial rotation, digital, Run of Press (ROP) print, national direct mail coupon mailings, and other freestanding inserts (pSI) plans; it should also include interior menu and drive through menu board placements direction and suggested crew member "upsell scripts."
(RFP # 1)

    5.      Documents relating to or revealing the company (i.e., BKC-owned) stores' actual product mix (i.e. menu mix) actually realized, by nation-wide and by designated market area (DMA), for the period October 1, 2009 through June 30, 2010, which include the $1 DCB and the Buck Double promotion and features.

Defendant objected to both of these requests as irrelevant because as to Request # 1, there is no claim relating to the advertising by BKC and as to Request # 5, there are no issues relating to the product mix at BKC's company owned restaurants. In addition, Defendant objected to the extent the Requests sought proprietary information about products other than the DCB and the Buck Double.  Further, Defendant objected to the requests to the extent they sought information related to decisions that occurred after Burger King's decision to place the products on the Value Menu.

      In its Motion to Compel, Plaintiff contended that these materials were relevant to analyze the BK system and to determine whether changes were made after the products were placed on the Value Menu, as well as, to provide information about the lost profits due to the products placement.  Plaintiff asserted that the time frame is appropriate because BK still requires franchisees to sell the Buck Double at the $1.00 price.

      At the outset of the hearing, Plaintiff indicated that the Motion had been resolved to the extent that Defendant objected to Plaintiff's request for documents dated after the date that the decision was made to place the items on the Value Menu.  Defendant

12

confirmed that it agreed to abandon its position regarding that date. Thus, it is conceded by Defendant that documents dated after the DCB and Buck Double were placed on the Value Meal may be relevant to this litigation, if not otherwise objectionable.

At the hearing, Plaintiff argued that the advertising materials were relevant to ascertain what types of promotions Burger King engaged in after placing the DCB and Buck Double on the Value Menu. In addition, although Plaintiff conceded that advertisements related to other products was not directly relevant, Plaintiff still maintains that the materials are relevant to determine the overall advertising promotion after the DCB and Buck Double were placed on the Value Menu.

Defendant, on the other hand, again argued that the issues in this matter were greatly narrowed by the Court's Order on the Motion to Dismiss. However, the Defendant conceded that actions taken after the DCB and Buck Double were placed on the Value Menu might be relevant to determining whether Burger King's decision to place those items on the menu was made in good faith and thus agreed to produce those responsive documents which related to the DCB and the Buck Double.

Based upon the Parties' arguments presented at the hearing, and the particular allegations in this matter, the undersigned finds Plaintiff's position persuasive. Although the Plaintiff's request for advertisements for items other than the DCB and Buck Double do not necessarily directly relate to the products at issue, as discussed above, Plaintiff is entitled to challenge the imposition of changes to the price menu to the extent that those changes were not made in good faith (DE # 37 at 17). As made clear at the hearing, it is Plaintiff's contention that the advertising campaigns that Burger King engaged in related to the items on the Value Menu, as well as, the way in which the

products were packaged or advertised together, both shed light on whether Burger King acted in good faith in placing certain items on the Value Menu and pricing certain items to the detriment of the franchisees.  In other words, Plaintiff asserts that the manner in which Burger King conducted advertising for all items after the DCB and the Buck Double were placed on the Value Menu may provide evidence of whether Burger King was acting in good faith at the time it initially decided to place those items on the menu.

As to the request for "product-mix" information, Plaintiff explained at the hearing that the product mix information was actually the sales figures regarding certain products.  Plaintiff stated that it believed that Burger King test-marketed certain product placements and combinations at the Burger King corporate stores and various franchise stores prior to requiring the franchises to place the DCB and the Buck Double on the Value Menu.  Plaintiff asserted that the results of the testing demonstrated the "cannibalization" of the profits for these items if they or other items were placed on the Value Menu and thus go to the cost and profit issues present in this case.

Defendant, on the other hand, asserted that the issue of placement of other products, sales of other items and mixes of those products is merely an attempt by Plaintiff to obtain information about Burger King that are not relevant to this action.

The undersigned concludes that the request by Plaintiff may yield relevant documents.  Specifically, if Defendant knew, due to the product mix figures, that placing certain products on the Value Menu would result in decreased profits for the franchises but would result in an increase in revenue to Burger King, then that knowledge could demonstrate whether Burger King acted in good faith in determining whether it was desirable and reasonably necessary to place those items on the Value Menu.  Although the undersigned recognizes that the documents requested by Plaintiff may not support

**Plaintiff's contention in this regard, until the documents are produced, Plaintiff is unable to make such a determination. Accordingly, Plaintiff's Motion to Compel is granted as to these two items. Defendant must produce documents responsive to Requests number 1 and 5 contained in Plaintiff's Second Set of Request for Production of Documents.**

 **C.** **Defendant Burger King Corporation's Motion for Protective Order Regarding Coca-Cola Subpoena (DE # 66) and Plaintiff's Cross-Motion to Compel Production of Documents from Coca-Cola (DE # 75)**

**In the Motion for Protective Order, Defendant seeks to prevent Coca Cola from producing certain documents that are responsive to a document subpoena issued on June 29, 2010 by the Plaintiff to Coca-Cola. Specifically, Plaintiff requested documents from Coca Cola related to the sale of beverages and Value Meals between May 1, 2009 and June 30, 2010 (RFP ## 1, 3); consumer research information between May 1, 2009 and June 30, 2010 (RFP # 2); and, communications between and among Coca Cola employees and/or any third party or representative regarding the $1.00 DCB or Buck Double, including the impact of that price point on sales of Coca Cola products and Value Meals (RFP ## 4, 5). In its papers in Opposition to Defendant's Motion for Protective Order and Cross-Motion to Compel the Production of Documents from Coca-Cola, Plaintiff stated that Coca-Cola is willing to produce the requested documents but will refrain from producing the documents at issue until this Court has ruled on the motions related to the Subpoena (DE ## 67, 75).**

**Defendant seeks a protective order regarding the production of documents related to these requests because the requests seek proprietary information not relevant to the placement of the DCB or the Buck Double on the Value Menu. Defendant asserts that the requested documents instead relate to documents that are relevant to a California action between NFA, Coca-Cola and Burger King that has been dismissed.**

At the hearing, Plaintiff presented an August 6, 2010 letter from Counsel for Coca-Cola regarding Plaintiff's subpoena and Coca-Cola's production of documents responsive to the subpoena. In the letter, Coca-Cola states that it is producing all but three categories of documents requested because whether those documents are discoverable is still at issue between the Parties. Thus, at the hearing, the only issues related to Plaintiff's subpoena to Coca-Cola which remained unresolved were the production of: (1) volume reports; (2) Burger King consumer research unrelated to the Double Cheeseburger promotion; and, (c) documents after October 31, 2009. The Parties again stated that Defendant had abandoned its argument that documents dated after October 2009 were not appropriate for discovery and thus Coca-Cola documents dated after that date were no longer at issue. Accordingly, at the hearing, the Parties each presented argument on volume reports and consumer research.

1. **Information regarding Sales of Coke Products & Value Meals from May 1, 2009 through June 30, 2010**

In its papers, Plaintiff asserted that the documents regarding the sales of coke products and Value Meals are relevant to this litigation because those documents may demonstrate whether it was reasonable, necessary or desirable to set a maximum price on the DCB. It is Plaintiff's contention that Burger King knew that lowering the price of the DCB would reduce sales of Value Meals which include a coke drink which, in turn, would harm the franchisees' profits without adversely affecting Burger King because Burger King's royalties are based on overall revenue rather than profits (DE # 67 at 5).

At the hearing, Plaintiff asserted that the information regarding volume sales of Coca Cola goes to the profitability of "ancillary" products, e.g., beverages and french fries, which would show how the placement of the DCB and the Buck Double on the

16

**Value Menu affected the overall profits and sales of other items. In other words, the documents could show whether the sales of ancillary items rose or declined after the promotion and placement of the DCB on the Value Menu. In addition, Plaintiff noted that such documents have already been produced in discovery by those companies who sold french fries.**

**In response, Defendant countered that the volume sales of items other than the DCB or the Buck Double are irrelevant to this action.**

**The undersigned concludes that the subpoenaed documents are potentially relevant to this action and discoverable. Specifically, the documents may evidence that Defendant either knew, or chose to disregard, information which demonstrated that certain products would suffer decreased sales if the DCB or Buck Double was placed on the Value Menu and therefore the profits of the franchisees would be adversely impacted. Although the sales figures from Coca-Cola may focus on the sales of beverages, as explained by Plaintiff at the hearing, the sale of "ancillary" products may be directly correlated to the sales of food items and the impact on sales of packaging and promoting certain items together. Thus, again, Burger King's decision to consider this information may well be relevant to whether Burger King acted in good faith in placing the DCB and the Buck Double on the Value Menu. In addition, because the subpoena is directed at Coca-Cola, who has not objected to the production of such documents, the Defendant is unable to raise issues regarding the burdensome nature of the production. Accordingly, the documents are relevant and should be produced by Coca-Cola to the Plaintiff.**

### 2. Burger King-related consumer research for Period May 1, 2009, through June 30, 2010

Plaintiff seeks to obtain the results of consumer research conducted by Coca-Cola as specified in Plaintiff's Subpoena issued to Coca Cola. At the hearing, Defendant asserted that the discovery of this information is irrelevant because the only issue is what Burger King looked at, evaluated and considered in deciding to place the DCB and Buck Double on the Value Menu.

However, for the reasons discussed above, the undersigned concludes that the documents may be relevant to demonstrating whether Burger King acted in good faith in placing the items at issue on the Value Meal. Again, if Burger King reviewed the research or elected not to review consumer research that demonstrated that certain marketing decisions would harm the profits of the franchisees, then that decision could support the Plaintiff's claim. Accordingly, the Defendant's Motion for Protective Order on this issue is Denied. The documents related to the consumer research as set forth in Plaintiff's subpoena to Coca-Cola shall be produced by Coca-Cola to Plaintiff as soon as practicable.

### III. CONCLUSION

Based upon the foregoing, it is

**ORDERED and ADJUDGED** that Plaintiff's Motion to Compel Documents Responsive to Plaintiff's First Request for Production of Documents (DE # 42) is **GRANTED, in part**. Defendant shall produce documents responsive to Request for Production of Documents ## 35-43 as requested in Plaintiff's First Request for Production and privilege log, to the extent consistent with this Order, on or before October 1, 2010. It is further

**ORDERED and ADJUDGED** that Plaintiff's Second Motion to Compel Production of Documents From Defendant Burger King in Response to Plaintiff's Second Request for Production (DE # 100) is **GRANTED**. Defendant shall produce documents responsive to Request for Production of Documents ## 1 and 5 as requested in Plaintiff's Second Request for Production to the extent consistent with this Order, on or before October 1, 2010. It is further

**ORDERED and ADJUDGED** that Defendant Burger King Corporation's Motion for Protective Order Regarding Coca-Cola Subpoena is **DENIED** (DE # 66) and Plaintiff's Cross-Motion to Compel Production of Documents from Coca-Cola is **GRANTED** (DE # 75). Counsel for both Parties shall ensure that a copy of this Order is provided to Coca-Cola and inform Coca-Cola that the matters related to the withheld subpoenaed documents have been resolved. Coca-Cola is directed to produce those documents to Plaintiff as soon as practicable but no later than October 8, 2010.

**DONE AND ORDERED** in chambers in Miami, Florida, on June 20, 2010.

*Andrea M. Simonton*
ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

Copies furnished via CM/ECF to:
The Honorable K. Michael Moore, United States District Judge
All counsel of record